IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


BOBBY C. HOLLE,

        Plaintiff,

vs.                            Case No. 12-1242-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

## I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

1

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

February 12, 2010, administrative law judge (ALJ) Christine A. Cooke issued her decision (R. at 17-26). Plaintiff alleges that he has been disabled since December 15, 2005 (R. at 17). Plaintiff is insured for disability insurance benefits through

June 30, 2010 (R. at 19). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date of disability (R. at 19). At step two, the ALJ found that plaintiff has the following severe impairments: COPD, and a history of multiple cardiac conditions (R. at 19). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 21). After determining plaintiff's RFC (R. at 21), the ALJ determined at step four that plaintiff is unable to perform any past relevant work (R. at 24). At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 24-25). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 25).

**III. Did the ALJ err at step two?**

Plaintiff argues that the ALJ erred at step two in finding that plaintiff's mental impairment was nonsevere. The burden of proof at step two is on the plaintiff. See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis). A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997); see Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity"). A claimant need only be able to show at

this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities. Williams, 844 F.2d at 751. However, the claimant must show more than the mere presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled. 20 C.F.R. § 404.1512(c), § 416.912(c).

According to 20 C.F.R. § 404.1520a(c)(3), the Commissioner rates a claimant's mental limitations in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. If the degree of limitation in the first three categories is none or mild, and none in the fourth category, the Commissioner will generally conclude that the mental impairment is nonsevere. 20 C.F.R. § 404.1520a(d)(1).

The ALJ found that plaintiff had mild limitations in activities of daily living and social functioning. The ALJ further found that plaintiff had no limitation in concentration, persistence or pace. Finally, the ALJ found that plaintiff had no episodes of decompensation (R. at 20). These findings match the findings of Dr. Smith (R. at 463-475). By contrast, plaintiff cites to no medical opinion evidence indicating that plaintiff's mental impairments are severe.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). The court finds that substantial evidence supports the ALJ's determination that plaintiff's mental impairments are not severe.

Even assuming plaintiff met his burden of proving that plaintiff had a severe mental impairment, the issue before the court would be whether it is reversible error if the ALJ fails to list all the severe impairments at step two. In Brescia v. Astrue, 287 Fed. Appx. 626, 628-629 (10th Cir. July 8, 2008), the claimant argued that the ALJ improperly determined that several of her impairments did not qualify as severe impairments. The court held that once an ALJ has found that plaintiff has at least one severe impairment, a failure to designate another as "severe" at step two does not constitute

7

reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. In Hill v. Astrue, 289 Fed. Appx. 289, 291-292 (10th Cir. Aug. 12, 2008), the court held that once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. The ALJ's failure to find that additional alleged impairments are also severe is not in itself cause for reversal. However, the ALJ, in determining plaintiff's RFC, must consider the effects of all of the claimant's medically determinable impairments, both those he deems "severe" and those "not severe."

In making his RFC findings, the ALJ stated that she considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence; the ALJ also stated that she considered the opinion evidence (R. at 21). Furthermore, the ALJ indicated that in making her RFC findings, she "must consider all of the claimant's impairments, including impairments that are not severe" (R. at 18-19). Plaintiff failed to cite to any medical evidence indicating that plaintiff's mental impairments would have more than a minimal impact on plaintiff's ability to work or constituted a severe

impairment.  In light of the fact that the ALJ found other severe impairments at step two, considered all symptoms and evidence when making RFC findings for the plaintiff, considered all of plaintiff's impairments, including non-severe impairments when making his RFC findings, and the failure of plaintiff to cite to any medical evidence that plaintiff had limitations from these impairments that were not included in the ALJ's RFC findings, the court finds that the ALJ did not err in his consideration of plaintiff's mental impairments.

**IV. Did the ALJ err at step three in her finding that plaintiff's impairments do not meet or equal a listed impairment?**

The ALJ found at step three that plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.  The ALJ noted that plaintiff's attorney represented that he was not contending that plaintiff's conditions met or equaled a listed impairment.  The ALJ further noted that no doctor had stated that plaintiff's conditions met or equaled a listed impairment (R. at 21).

At the hearing on October 6, 2009, the transcript contains the following:

> ALJ: For the record, do you contend that your client's impairment or combination of impairments meets or medically equals the criteria of any listed impairment?

ATTY: No, your honor.

(R. at 46). The issue before the court is whether this representation by counsel precludes plaintiff from raising this issue.

The doctrine of invited error is set forth as follows:

> The invited error doctrine prevents a party from inducing action by a court and later seeking reversal on the ground that the requested action was error. <u>Eateries, Inc. v. J.R. Simplot Co.</u>, 346 F.3d 1225, 1229 (10th Cir. 2003); <u>John Zink Co. v. Zink</u>, 241 F.3d 1256, 1259 (10th Cir. 2001). This doctrine has been applied when a party requested that the Departmental Appeals Board (DAB) of the Department of Health and Human Services, in an appeal from an ALJ decision, conduct a de novo review of the record, and then claimed before the district court that the DAB erred in conducting a de novo review. <u>St. Anthony Hospital v. U.S. Dept. of H.H.S.</u>, 309 F.3d 680, 686, 690, 696 (10th Cir. 2002). This doctrine has been applied by this court when an attorney stipulated to an ALJ that the claimant's mental impairment was non-severe at step two, and then argued to this court that the ALJ erroneously determined that the mental impairment was non-severe. <u>Basler v. Barnhart</u>, Case No. 02-1084-WEB (recommendation and report, April 2, 2003 at 10-12; affirmed by district court April 15, 2003), and when an attorney, on the record, amended the onset date to a date later than had been originally alleged, but then argued that the ALJ erred by failing to find the earlier onset date which had been originally alleged. <u>Rivas v. Barnhart</u>, Case No. 05-1266-MLB (recommendation and report, July 26, 2006 at 6-9; affirmed by district court Aug. 16, 2006).
> In this case, the attorney clearly and unambiguously asserted to the ALJ that he

> did not believe that his client met a
> listing. It is therefore clear that
> plaintiff's counsel induced or invited the
> ALJ at step [three] to find that plaintiff
> did not meet a listed impairment.
> Therefore, the court holds that the doctrine
> of invited error bars the plaintiff from
> raising this issue on appeal.

Tracy v. Astrue, 518 F. Supp.2d 1291, 1305-1306 (D. Kan. 2007).

The facts of the case before the court mirror the facts in Tracy. The court finds that plaintiff's counsel induced or invited the ALJ at step three to find that plaintiff did not meet or equal a listed impairment. Therefore, the court holds that the doctrine of invited error bars the plaintiff from raising this issue on appeal.

**V. Did the ALJ err by failing to consider or discuss medical opinion evidence?**

An ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). This rule was recently described as a "well-known and overarching requirement." Martinez v. Astrue, 2011 WL 1549517 at *4 (10th Cir. Apr. 26, 2011). Even on issues reserved to the Commissioner, including plaintiff's RFC and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3. The ALJ "will" evaluate every medical opinion that they receive, and will

consider a number of factors in deciding the weight to give to any medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). It is clear legal error to ignore a medical opinion. <u>Victory v. Barnhart</u>, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).

The record contains the following letter from Dr. Pascucci, dated October 22, 2007:

> The letter is in regards to Mr. Bobby Holle, a patient of mine at the Oklahoma University Internal Medicine Clinic in Tulsa, Oklahoma. Mr. Holle has radiologic and oxygen saturation monitor evidence of extremely severe emphysema and intermittent claudication, both which put severe limits on Mr. Holle's ability to hold gainful employment. Mr. Holle is in desperate need of medical attention and is actively seeking such attention but due to his inability to gain employment secondary to his medical conditions he finds himself unable to afford the necessary medical interventions. Without assistance and intervention, I expect Mr. Holle to have a greatly shortened life span.

(R. at 402). The ALJ did not discuss this medical opinion in her decision; this point is conceded by defendant in her brief (Doc. 20 at 16).

As the regulations and case law make clear, even on issues reserved to the Commissioner, including the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored. Because of the ALJ's failure to consider the medical opinion of Dr. Pascucci, this

case shall be reversed and remanded in order for the ALJ to consider this medical opinion.

The court would also note that the record contains an RFC assessment from Dr. Seibert, a treating physician, dated October 1, 2009 (R. at 644-647). Dr. Seibert sets forth a number of physical limitations in her report. She further opined that plaintiff would not be able to work on a sustained and continuing basis 8 hours a day, 5 days a week because of fatigue (R. at 645), that plaintiff's impairments would interfere with his ability to engage in work that required a consistent pace of production, and that plaintiff would be unable to complete tasks in a timely manner for 1 or more hours in an 8 hour workday (R. at 646). Dr. Seibert provided a narrative discussion of the medical findings that supported her opinions, including fatigability and shortness of breath with minimal activity (R. at 647).

The ALJ discounted the opinions of Dr. Seibert because they were not supported by the medical evidence of record or by the testimony of Dr. Gaeta, a non-examining medical expert who testified (R. at 24). However, the opinions of Dr. Seibert are in fact supported by the medical opinion of another treatment provider, Dr. Pascucci. Furthermore, the opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are

given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). Thus, the record in fact reflects that two treatment providers have opined that plaintiff is disabled, while a non-examining physician has opined that plaintiff is able to work.

    The ALJ must provide a legally sufficient explanation for rejecting the opinions of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084. In light of the fact that the ALJ failed to mention or discuss the opinion of Dr. Pascucci, the ALJ has provided no explanation for rejecting the opinions of two treatment providers in favor of a non-examining medical source. Furthermore, an ALJ must not consider the opinions of one treating source in isolation, but his opinions must be considered in light of the entire evidentiary record, including the opinions and assessments of other treating sources. The court is concerned with the necessarily incremental effect of each individual report or opinion by a source on the aggregate assessment of the evidentiary record, and, in particular, on the

evaluation of reports and opinions of other medical treating or examining sources, and the need for the ALJ to take this into consideration. See Lackey v. Barnhart, 127 Fed. Appx. 455, 458-459 (10th Cir. April 5, 2005).

This case shall therefore be remanded in order for the ALJ to consider the opinions expressed by Dr. Pascucci. Those opinions should be considered in light of all the evidence, and in particular the opinions of another treatment provider, Dr. Seibert.

**VI. Did the ALJ err in his reliance on plaintiff's daily activities?**

The ALJ noted that in a report filled out by claimant, he:

> listed a myriad of activities in which he engaged, including walking, sitting at his brother's home or at a friend's homes, watching television, doing computer work, and tending to a dog (Exhibit 6E). These activities are not compatible with total disability.

(R. at 22).

According to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity. 20 C.F.R. § 404.1572(c) (2013 at 399). Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of

15

testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity. Krauser v. Astrue, 638 F.3d 1324, 1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping. The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible. The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work.** As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." In other words, evidence of performing general housework does not preclude a finding of disability. In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for

16

>            groceries.  We noted that these were
>            activities that were not substantial
>            evidence of the ability to do full-time,
>            competitive work. In Baumgarten v. Chater,
>            75 F.3d 366, 369 (8th Cir.1996), the ALJ
>            pointed to the claimant's daily activities,
>            which included making her bed, preparing
>            food, performing light housekeeping, grocery
>            shopping, and visiting friends.  We found
>            this to be an unpersuasive reason to deny
>            benefits: "**We have repeatedly held...that
>            'the ability to do activities such as light
>            housework and visiting with friends provides
>            little or no support for the finding that a
>            claimant can perform full-time competitive
>            work**.'" Id. (quoting Hogg v. Shalala, 45
>            F.3d 276, 278 (8th Cir.1995)). Moreover, we
>            have reminded the Commissioner
>
>>                 **that to find a claimant has the
>>                 residual functional capacity to
>>                 perform a certain type of work,
>>                 the claimant must have the ability
>>                 to perform the requisite acts day
>>                 in and day out, in the sometimes
>>                 competitive and stressful
>>                 conditions in which real people
>>                 work in the real world...The
>>                 ability to do light housework with
>>                 assistance, attend church, or
>>                 visit with friends on the phone
>>                 does not qualify as the ability to
>>                 do substantial gainful activity**.
>
>            Thomas v. Sullivan, 876 F.2d 666, 669 (8th
>            Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

Walking, sitting, watching television, doing computer work, and tending to a dog do not qualify as the ability to do substantial gainful activity.  Watching television is not inconsistent with allegations that a person is unable to work.

17

See Krauser v. Astrue, 638 F.3d 1324, 1333 (10th Cir. 2011)(watching television not inconsistent with allegations of pain and concentration problems). Furthermore, one does not need to be utterly or totally incapacitated in order to be disabled. Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Jones v. Sullivan, 804 F. Supp. 1398, 1405 (D. Kan. 1992).

Furthermore, the report filled out by the plaintiff also states that plaintiff can only engage in short walks (one or two blocks), he goes slow and cannot run, and he stops to catch his breath (R. at 350-355). An ALJ cannot use mischaracterization of a claimant's activities of a claimant's activities by selective and misleading evidentiary review to discredit his/her claims of disabling limitations. Sitsler v. Astrue, 410 Fed. Appx. 112, 117-118 (10th Cir. Jan. 10, 2011). Although the ALJ found that plaintiff engaged in some activities, the ALJ failed to discuss any of the limitations noted above in the report.

Therefore, on remand, the ALJ will need to examine plaintiff's daily activities in light of the regulations and case law set forth above. The ALJ will need to make new credibility findings after giving consideration to all the medical opinion evidence, and examining plaintiff's daily activities in light of the regulations and case law.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 17th day of September 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge